27 C.C.P.A.(Patents)

## In re ALLEN et al.
### Patent Appeal No. 4330.

Court of Customs and Patent Appeals.

June 24, 1940.

John E. Jackson, of Pittsburgh, Pa. (Charles B. Spencer, of Pittsburgh, Pa., and Edward W. Shepard, of Washington, D. C., of counsel), for appellants.

Howard S. Miller, of Washington, D. C., for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

Having allowed four apparatus claims in appellants' application for a patent relating to the recovery of coke oven by-products, the Primary Examiner of the United States Patent Office rejected claim 11, a process claim, as not being inventive over the prior art, and the decision of the examiner was affirmed by the Board of Appeals. From the decision of the board appellants brought the case here for review.

Said rejected claim 11 reads as follows: "11. A process for removing ammonia and phenol from ammonia liquor in coke-oven by-products recovery operations, including distilling said liquor under such conditions so as to remove substantially all the acidic gases therefrom while retaining substantially all the phenol in said liquor, contacting said liquor with a phenol absorbing medium so as to remove substantially all the phenol therefrom and subsequently treating said medium with a caustic so as to recover the phenol from the same, freeing the fixed ammonia in said liquor and distilling said liquor so as to remove substantially all the ammonia therefrom."

The references relied upon are:

Tiddy, 1,878,979, September 20, 1932.

Koppers, 1,905,108, April 25, 1933.

As appears from the claim, the alleged invention defined therein relates to recovering ammonia and phenol from the ammonia liquor in coke oven by-products recovery operations. It is explained at some length by appellants that ammonia liquor of the character with which we are here concerned not only contains ammonia but many other constituents such as the tar acid, phenol; that the dumping of this residue into the streams causes undesirable pollution and that it is desirable to remove the phenol from the ammonia liquor. It is said that many suggestions have been made to accomplish the purpose and have found their way into patents, which are not of record here. The large steel concerns like the Carnegie-Illinois Steel Corporation, with whom appellants are associated, have large coke works in order to obtain coke for the manufacture of steel and to obtain gas for furnishing heat. The Koppers Company is the assignee of both the reference patents to which further consideration will be given later.

Appellants claim that the invention of the instant application, which is also assigned to the Koppers Company, was made by appellants in an effort to work out with the Koppers Company a satisfactory solution of the problem by using the Koppers Company machinery.

In the conventional method of recovering ammonia and phenol, the ammonia liquor is first distilled by heating with steam to recover the free ammonia, that is, the ammonia that is not combined with other constituents is driven off and recovered by some suitable method. The residual liquor, under the conventional method, is then contacted with a gaseous medium such as steam, air, etc., which will remove the phenol from the liquor carrying it off as a gas into a phenol recovery unit in which the phenol is recovered from the gas by treatment with a caustic. The dephenolized liquor is then treated with a compound such as lime which will free the combined ammonia from its compounds such as sulphates, etc., and is heated to aid in the decomposition. The applicants disclose a process which is a modification of the conventional procedure in that they by-pass a portion of the steam and ammonia from the fixed ammonia still and the so-called lime leg around the free still and pass a portion only of these vapors through the free still. They assert that if all these vapors are passed through the free still, some of the phenol is driven off along with the ammonia. Appellants' allowed apparatus claims relate to apparatus for carrying out the division of the vapors.

In rejecting claim 11, the examiner stated:

"Claim 11 is believed however to present at the most a functional difference only over Tiddy. The claim appears to be met in terms by Tiddy except for the statement in lines 3–5 of 'distilling said liquor under such conditions as to remove substantially all the acidic gases therefrom while retaining substantially all the phenol in said liquor.' Applicants have not disclosed what is meant by acidic gases in their specification nor

have they discriminated between their removal and that of the ammonia. Apparently they are removed alternatively or simultaneously. See page 3 of applicants' specification where they at numerous points have referred to the removal of ammonia and/or acid gases. Claim 11 has been rejected upon Tiddy alone. This patentee states, page 2, lines 104–126 that all the ammonia is removed from the gas liquor and little if any of the phenol escapes in the free still. Tiddy is treating a gas liquor and applicants are treating an ammonia liquor which is substantially the same. Tiddy is silent as to the removal of any acidic gases but all gas liquor or ammoniacal liquor contain such acidic gases and they would necessarily be removed to a considerable extent along with the ammonia. To clarify this point it is believed proper to refer to Koppers also of record in this case. This patentee is also treating a gas liquor and he distills this liquor in still 10 to drive off the free ammonia and some of the carbon dioxide and sulphuretted hydrogen (hydrogen sulphide). Thus it is shown that the distillation of the free ammonia from a gas liquor necessarily results in the distillation of some of the acidic gases also ($CO_2$ and $H_2S$). Koppers takes the gas liquor from the free still and subjects it to further treatment with steam in the scrubber 13 to remove, as he says, page 2, lines 3-9, the volatile acids and bases. These volatile bases are later recovered from the steam by an acid in scrubber 16 while the acids are removed by an alkali liquor in the scrubber. This would tend to indicate that removal of the free ammonia would not necessarily result in the removal of all the acidic gases. However, it may be noted that Koppers has scrubbed out the phenol in scrubber 13 since he recovers this phenol later from the vapors in scrubber 17. See page 2, lines 9-19. Applicants have not indicated what the acidic gases are nor in what manner they intend to separate them, but he has plainly indicated that he intends to distill off all the ammonia in the free still and retain substantially all the phenol. See page 3, lines 6-25 of their specification. However, this is exactly what Tiddy proposes to do. Reference to Koppers shows that when the ammonia is removed in the free still considerable amounts of acidic gases are removed also. Koppers groups phenol with the acidic gases but applicants are obviously not going to remove the phenol in the free ammonia still since it is their purpose to recover it later from the ammonia liquor in the scrubber 7. Since applicants have failed to establish any distinction in regard to the amount of acidic gases which they remove, it is believed that they contemplate removing only that portion which necessarily comes off with the ammonia and thus practice essentially the same process as Tiddy.

"It is not believed that applicants will seriously contend that any other element of the claim differs materially from Tiddy. If it should be assumed that the step of removing substantially all the acidic gases constitutes a patentable difference over Tiddy and Koppers then the question of how to determine infringement arises. Tiddy evidently removes a considerable portion of the acidic gases and one should not be held to infringe the claims of this application because he is practicing the process disclosed in the prior art. If the term acidic gases is taken in the sense that Koppers uses it to include phenol also then the distinction becomes meaningless as applicants would remove the phenol also in this step and could not later recover it. It should further be noted that applicants have furnished no indication as to what temperatures, pressures, amount of steam, etc. are necessary to effect the desired removal of acidic gases so that the art would be entirely without any criterion as to when it was infringing the process of this claim.

"It is therefore thought that the claim constitutes an unwarrantable extension of a monopoly over something which the art should be free to practice and that the rejection of the claim on Tiddy should be affirmed. It may be noted that this application, Tiddy and the Koppers patent are all assigned to the Koppers Co., and it is believed that under such circumstances it is all the more incumbent upon applicants to clearly define the scope of the monopoly which they seek to obtain, a monopoly which upon its face at least amounts to an unwarrantable extension of the monopoly of the Tiddy patent."

We have quoted at some length from the examiner because it appears to be a very apt and carefully prepared statement of the exact situation that is here presented.

The board in a very short decision affirming that of the examiner said:

"The Tiddy patent shows every step of the claim and states in line 105 et seq., page 2, that the temperature of the ammonia vapors escaping from the top of the free ammonia still can be kept sufficiently low so that little on any phenol escapes there-

with. We agree with the examiner that Tiddy discloses as much in this respect as applicants state in claim 11 and Tiddy would remove the acidic gases as well as applicants. Koppers refers to the removal of acidic gases at line 80, page 1, in a similar process.

"Applicants have filed an amendment in which they have copied the claims of the Denig patent, No. 2,127,503 and their brief refers largely to this patent. Since the examiner has refused to enter this amendment which was filed on March 30, 1939, and the affidavit filed on April 27, 1939, no consideration of these papers has been given in this decision.

"The examiner points out that applicants have no disclosure of the removal or complete removal of acidic gases, but we feel that if their removal is incidental to their process, it is inherent in the Tiddy process."

In this court appellants make three contentions: First, that error was committed in holding that claim 11 lacks invention over the Tiddy patent and that the allowance of claim 11 would be an unwarranted extension of the monopoly of the Tiddy patent; second, that the board erred in holding that every step of claim 11 is shown in the Tiddy patent; third, that a patent with claims of the same scope as claim 11 covering the invention disclosed in appellants' instant application was allowed on August 23, 1938, to one Fred Denig, which patent is numbered 2,127,503 and is assigned to the Koppers Company, and that it was error on the part of the board not to consider "what effect the allowance of the Denig patent might have in the way of indicating whether claim 11 is allowable over the Tiddy patent."

The record presents a rather unusual situation. Appellants urge that the Patent Office made a mistake in not having an interference declared between the instant application and the Denig application and that the instant claim should be allowed since if the Denig claim were allowable over the prior art, so also would the claim at bar be allowable. The examiner has pointed out that all the patents here involved and the instant application are owned by a common assignee—the Koppers Company—and the attorney for the Commissioner of Patents has suggested that it is not the practice of the Patent Office to declare interferences between applications assigned to the same assignee, citing In re Mann et al., 47 F.2d

370, 18 C.C.P.A., Patents, 1020, and In re Willoughby, 88 F.2d 482, 24 C.C.P.A., Patents, 1033. It seems to be the position of the Patent Office that the allowance of the instant claim would be to extend the monopoly already enjoyed by the Koppers Company.

It is well understood law that the allowance of one claim by the Patent Office to an applicant is not to be regarded as a proper basis for determining the allowability of another claim to another party.

As we understand the issue presented, it is whether or not the tribunals below were right in denying the claim on Tiddy or on Tiddy in view of Koppers. Appellants' application relates to a highly technical chemical subject matter. The tribunals have concurred in holding that Tiddy shows every step that the claim at bar calls for and that the so-called step or limitation in the claim to which appellants call special attention is functional in character and that this functional statement is the only thing that distinguishes applicants' disclosure from that of Tiddy. Tiddy expressly states: "In the operation of the process the temperature of the ammonia vapors escaping from the top of the free ammonia still can be kept sufficiently low so that little if any phenol escapes therewith, but the liquor is heated in the free ammonia still to a temperature sufficiently high so that when it enters the scrubber it will be preheated to a temperature around 98° C. or higher, which temperature is required for effective driving off of phenol by the inert gases employed."

The matter has been explained so thoroughly in the discussion of the examiner heretofore quoted that it is not thought necessary to here repeat what was well said there. We think the tribunals reached the right conclusion and we approve the reasons assigned for reaching such conclusion.

The appellants here state: " * * * In fact there is nothing in the Tiddy patent to suggest that it is possible to drive off the acidic gases without driving off the phenol."

That question was urged before the Patent Office and was well answered by the tribunals below. It seems clear that when, in the Tiddy process, the ammonia is driven off, acidic gases are also driven off, and little, if any, phenol escapes therewith.

The decision of the Board of Appeals is affirmed.

Affirmed.